```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
IN RE: Acetaminophen – ASD-ADHD          :
Products Liability Litigation            :    22md3043 (DLC)
                                         :    22mc3043 (DLC)
This Document Relates To:                :    22cv9011 (DLC)
Hatfield, et al., v. Walmart Inc.,       :
22cv9011                                 :    OPINION AND
                                         :       ORDER
---------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Keller Postman LLC
Ashley C. Keller
150 N. Riverside Plaza, Ste. 4100
Chicago, IL 60606

Watts Guerra LLC
Mikal C. Watts
Millennium Park Plaza RFO
Ste. 410, C112
Guaynabo, Puerto Rico 00966

The Lanier Law Firm
W. Mark Lanier
Tower 56
126 East 56th St., 6th Floor
New York, NY 10022

For defendant Walmart Inc.:
King & Spalding LLP
Kristen Renee Fournier
1185 Ave. of the Americas, 34th Floor
New York, NY 10036

King & Spalding LLP
Donald F. Zimmer, Jr.
Ethan P. Davis
50 California St., Ste. 3300
San Francisco, CA 94111

King & Spalding LLP
Livia M. Kiser

```
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606

King & Spalding LLP
Jeffrey S. Bucholtz
1700 Pennsylvania Ave. N.W., Ste. 900
Washington, DC 20006

For 22md3043 defendant Sam's West, Inc.:
King & Spalding LLP
Kristen Renee Fournier
1185 Ave. of the Americas, 34th Floor
New York, NY 10036

King & Spalding LLP
Donald F. Zimmer, Jr.
50 California St., Ste. 3300
San Francisco, CA 94111

King & Spalding LLP
Austin Evans
500 W. 2nd St., Ste. 1800
Austin, TX 78701

For 22md3043 defendant The Kroger Co.:
Stone | Dean LLP
Gregory E. Stone
Joseph A. Lara
21052 Oxnard St.
Woodland Hills, CA 91367

For 22md3043 defendant Rite Aid Corporation:
Smith, Sovik, Kendrick & Sugnet, P.C.
David M. Katz
Karen G. Felter
250 S. Clinton St., Ste. 600
Syracuse, NY 13202

For 22md3043 defendants CVS Pharmacy, Inc., Costco Wholesale
Corp., and Walgreen Co.:
Barnes & Thornburg LLP
Kristen L. Richer
2029 Century Park E., Ste. 300
Los Angeles, CA 90067

Barnes & Thornburg LLP
```

Sandra M. Ko
1717 Pennsylvania Ave. N.W., Ste. 500
Washington, DC 20006

Barnes & Thornburg LLP
Nadine S. Kohane
390 Madison Ave., 12th Floor
New York, NY 10017

For 22md3043 defendants 7-Eleven, Inc., Dollar Tree Stores, Inc., and Family Dollar Stores, LLC:
Lori B. Leskin
Mitchel Russell Stern
250 W. 55th St.
New York, NY 10019

For 22md3043 defendant Target Corporation:
Morrison & Foerster LLP
Julie Y. Park
12531 High Bluff Dr., Ste. 100
San Diego, CA 92130

For 22md3043 defendants Safeway Inc. and Dolgencorp, LLC:
Winston & Strawn LLP
Amanda L. Groves
Gregory A. Ellis
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071

DENISE COTE, District Judge:

Robin Hatfield, individually and on behalf of her minor child C.H. (together, "Plaintiffs"), brings this action against Walmart Inc. ("Walmart"). The case is one of several in this multidistrict litigation ("MDL") in which plaintiffs allege that in utero exposure to acetaminophen causes autism spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder ("ADHD") in children. This Opinion addresses two of the grounds contained within Walmart's motion to dismiss: (1) the motion to

3

dismiss the Plaintiffs' standalone claim for apparent manufacturer liability and (2) the motion to dismiss all of Plaintiffs' claims on the ground that Walmart is protected by the "innocent seller" provision in the Tennessee Products Liability Act, Tenn. Code Ann. §§ 29-28-101 to -108 ("TPLA").

For the following reasons, the motion is granted in part. The Plaintiffs' standalone claim for apparent manufacturer liability is dismissed.  The motion to dismiss the remaining claims based on the innocent seller provision of the TPLA is denied.

## Background

The following facts are drawn from the Plaintiffs' short form complaint ("SFC") and the master complaint in this MDL that the SFC incorporates by reference.  The facts are taken as true for the purposes of this motion.  The Court assumes familiarity with its prior Opinions in this MDL addressing motions to dismiss on other grounds and summarizes only those facts relevant to this Opinion.  In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2023 WL 3126636 (S.D.N.Y. Apr. 27, 2023) ("Misrepresentation Claims Opinion"); In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2023 WL 3126589 (S.D.N.Y. Apr. 27, 2023) ("Causation and Knowledge Opinion"); In re Acetaminophen – ASD-ADHD Prods. Liab.

Litig., No. 22md3043 (DLC), 2023 WL 3045802 (S.D.N.Y. Apr. 21, 2023) ("TCPA and TPLA Opinion"); In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2023 WL 3026412 (S.D.N.Y. Apr. 20, 2023) ("April Preemption Opinion"); In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2022 WL 17348351 (S.D.N.Y. Nov. 14, 2022) ("November Preemption Opinion").

Hatfield and her child, C.H., both reside in Tennessee. C.H. has ASD.  Walmart is a Delaware corporation with its principal place of business in Arkansas.  Walmart sells several store-branded acetaminophen products, which are collectively referred to as "Equate Acetaminophen."

A third party, L.N.K. International, Inc. ("LNK"), manufactures Equate Acetaminophen products.  The products are packaged and labeled with Walmart's branding and do not identify LNK as the actual manufacturer.

According to the SFC, even though the products are manufactured by LNK, Walmart exercises substantial control over the manufacture, labeling, and packaging of Equate Acetaminophen.  For example, in a contract between LNK and Walmart, LNK represented that it would "comply with all specifications contained in" every Walmart order of the Equate Acetaminophen products.  LNK similarly represented that it would

comply with the requirements in Walmart's Standards for Suppliers, which include rules regarding product labeling. Walmart is also listed as the "labeler" for Equate Acetaminophen in the online label repository maintained by the U.S. Food and Drug Administration ("FDA").

From October 2011 to June 2012, while pregnant, Hatfield consumed Equate Acetaminophen, which she had purchased in Sweetwater, Tennessee.  Several studies have shown an association between prenatal exposure to acetaminophen and ASD and ADHD in children.  Nonetheless, the label for Equate Acetaminophen did not mention the risk that a child could develop ASD or ADHD if the child's mother consumed acetaminophen while pregnant.  Hatfield asserts that, had she been warned of this risk, she would have taken less Equate Acetaminophen or would not have taken it at all.

On June 7, 2022, the Plaintiffs filed this action in the U.S. District Court for the Western District of Arkansas.  On October 5, the Judicial Panel on Multidistrict Litigation consolidated this action with others asserting claims that prenatal exposure to acetaminophen causes ASD and ADHD in children and transferred the cases to this Court under 28 U.S.C. § 1407.  On November 14, motions to dismiss this action and

another action within the MDL on preemption grounds were denied. See November Preemption Opinion, 2022 WL 17348351, at *11.[1]

At the November 17 initial pretrial conference, a schedule was set for the filing of two master complaints: one naming manufacturer Johnson & Johnson Consumer Inc. ("JJCI") and another naming Walmart, along with several other retailers (the "Retailer Defendants"). On December 16, the MDL plaintiffs filed the master complaint against the Retailer Defendants.

On January 24, 2023, Hatfield filed her SFC. The SFC asserted claims against Walmart under Tennessee law for strict liability for failure to warn; strict liability for design defect due to inadequate warnings and precautions; negligence; negligent misrepresentation; strict liability misrepresentation; violation of the Tennessee Consumer Protection Act, §§ 47-18-104 et seq. ("TCPA"); breach of implied warranty; and liability as apparent manufacturer. As explained in a prior Opinion in this case, Tennessee law applies to Hatfield's claims. See TCPA and TPLA Opinion, 2023 WL 3045802, at *2.

---

[1] The motion to reconsider this Opinion was denied on April 27, 2023. In re Acetaminophen - ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2023 WL 3126574 (S.D.N.Y. Apr. 27, 2023).

On February 10, the Retailer Defendants moved to dismiss all the SFCs filed against them, including Hatfield's.[2] The motion became fully submitted on March 17. The motion to dismiss Hatfield's claims under the TCPA was granted in an Opinion dated April 21. See TCPA and TPLA Opinion, 2023 WL 3045802, at *5. The motion to dismiss all of Hatfield's claims as subsumed within the TPLA was denied in the same Opinion. Id.

JJCI also moved to dismiss all the SFCs filed against it. Separate Opinions address the arguments raised in that motion. See Misrepresentation Claims Opinion, 2023 WL 3126636; Causation and Knowledge Opinion, 2023 WL 3126589; April Preemption Opinion, 2023 WL 3026412.

## Discussion

I. The Apparent Manufacturer Claim

The Plaintiffs' standalone claim for apparent manufacturer liability is dismissed. The basic rule of the apparent

---

[2] The Court has advised counsel that motions to dismiss should be brought against particular complaints and not against the master complaint. The master complaint is not the operative pleading; it is an administrative document. See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 490 (7th Cir. 2020). The Retailer Defendants' motion has been styled as brought against all complaints filed in the MDL. The Court, therefore, has chosen the SFC for this Opinion because it asserts claims under Tennessee law, and, as relevant to the specific arguments addressed in this Opinion, Tennessee law appears representative of several states' laws.

manufacturer doctrine is articulated in § 14 of the Restatement (Third) of Torts: Products Liability (the "Third Restatement"):

> One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.

The rule developed in the common law of various states at a time when manufacturers were held to different standards than nonmanufacturing sellers. See generally Stein v. Pfizer Inc., 137 A.3d 279, 287-94 (Md. Ct. Spec. App. 2016) (describing the history of the doctrine in American law and its inclusion in the three Restatements of tort law). Its continuing relevance for cases against product sellers is subject to debate given parallel developments in products liability law. Specifically, as courts began to recognize that sellers may be held strictly liable in tort for injuries caused by products that they sell, whether the seller was also a manufacturer became less relevant. Thus, the commentary in the Third Restatement explains:

> After inclusion of § 402A in the Restatement, Second, imposing strict liability on all commercial sellers of defective products for harm caused by product defects, it was questionable whether § 400 remained relevant in the context of products liability. Once § 402A imposed strict liability on all product sellers it made little, if any, difference whether the seller of a defective product was a retailer or a manufacturer.

Restatement (Third) of Torts § 14 cmt. a (Am. L. Inst. 1998).

The status of the apparent manufacturer doctrine in Tennessee is unsettled. Although versions of the rule appear in

9

Tennessee opinions from the twentieth century, see, e.g., Bogart v. STP Corp., No. 82C-578, 1985 WL 301940, at *7 (Tenn. Ct. App. Oct. 2, 1985) (Lewis and Koch, JJ., concurring), the Tennessee Supreme Court recently declined to resolve whether the doctrine applies in Tennessee.  Tatham v. Bridgestone Ams. Holding, Inc., 473 S.W.3d 734, 756 (Tenn. 2015).  Where state substantive law "is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court" of the state in question "would resolve the uncertainty or ambiguity." Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 241 (2d Cir. 2020) (citation omitted).  In doing so, courts "give fullest weight to the decisions of a state's highest court and proper regard to the decisions of a state's lower courts." Id. (citation omitted).  Courts may also consider "the decisions of federal courts construing state law." Id. (citation omitted).  It is unnecessary to resolve the exact contours of the doctrine in Tennessee at this stage, however, because one key point is clear.

Specifically, to the extent that the doctrine is alive and well in Tennessee, it appears to be a theory of liability for other torts, rather than a standalone cause of action.  See, e.g., Travelers Indem. Co. v. Indus. Paper & Packaging Corp., 2006 WL 2050686, at *4 (E.D. Tenn. July 19, 2006) (analyzing the

apparent manufacturer doctrine in the context of claims for products liability, breach of warranty, and negligence); Bogart, 1985 WL 301940, at *1, 6-7 (analyzing the doctrine in the context of claims of negligence and gross negligence).  Indeed, the Plaintiffs appear to concede as much in their opposition to the motion to dismiss.  They represent that they are only interested in having a vehicle that permits recovery on their claims.³  Accordingly, the Plaintiffs' standalone claim for apparent manufacturer liability (labeled Count VIII in the SFC) is dismissed.

II. Innocent Seller Law

Walmart also moves to dismiss all of Plaintiffs' claims on the ground that the innocent seller provision of the TPLA shields Walmart from liability.  The relevant provision states in pertinent part that "[n]o product liability action . . . shall be commenced or maintained against any seller, other than the manufacturer, unless" at least one of five exceptions applies.⁴  Tenn. Code Ann. § 29-28-106.  One such exception

---

³ If a plaintiff in this MDL can identify a jurisdiction in which the apparent manufacturer doctrine provides an independent source of recovery, it may be possible to plead it as a separate cause of action.

⁴ The TPLA defines "manufacturer" as "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102(4).  It defines "seller" in pertinent part as "a retailer, wholesaler,

permits products liability actions against a seller who is not a manufacturer when the

> seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought.

Id. § 29-28-106(1).  See also Coffman v. Armstrong Int'l, Inc., 615 S.W.3d 888, 897-98 (Tenn. 2021).

The Plaintiffs have plausibly pled that their claims fall within the exception for sellers that exercise substantial control over product manufacture, packaging, and labeling.  Rule 8, Fed. R. Civ. P., sets out the pleading requirements for a cause of action.  To satisfy that rule, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "To stave off threshold dismissal for want of an

---

or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption."  Id. § 29-28-102(7).

adequate statement of their claim, plaintiffs are required to do no more than state simply, concisely, and directly events that, they allege, entitle them to damages." Quinones v. City of Binghamton, 997 F.3d 461, 468 (2d Cir. 2021) (citation omitted).

The SFC alleges that Walmart "maintained ultimate control and authority over the manufacturing, packaging, and labeling of Equate Acetaminophen." This allegation is supported by more specific factual allegations, including those about LNK's contractual representations to Walmart that it would comply with order specifications and Walmart's Standards for Suppliers. Additionally, the Plaintiffs alleged that Walmart is designated as the "labeler" of Equate Acetaminophen on the FDA's online label repository. Thus, the Plaintiffs have pled that Walmart exercised substantial control over LNK in relevant respects such that her claims are properly brought against Walmart.

Walmart, focusing on the single allegation that LNK promised to adhere to Walmart's order specifications, argues that Plaintiffs' factual allegations are insufficient. According to Walmart, this contractual promise is nothing more than "standard form purchasing order language." This argument fails. Even if the language is boilerplate, the SFC's description of the contractual relationship between LNK and Walmart plausibly pleads that Walmart possessed the control over

LNK that is necessary for Plaintiffs to hold Walmart liable. Notably, Walmart entirely disregards other relevant allegations, including that LNK agreed to adhere to Walmart's Standards for Suppliers, which included rules on product labeling, and that Walmart is listed as the "labeler" on the FDA's repository. The precise extent of Walmart's control over LNK in the manufacture, labeling, and packaging of Equate Acetaminophen can be explored through discovery. But taking all reasonable inferences in the Plaintiffs' favor, the Plaintiffs have plausibly pled that their claims may be brought against Walmart under one of the five exceptions to Tennessee's innocent seller law.

## Conclusion

The February 10, 2023 motion to dismiss Plaintiffs' standalone claim for apparent manufacturer liability under Tennessee law is granted. The motion to dismiss the remaining claims based on the innocent seller provision in the TPLA is denied.

Dated:   New York, New York
         April 28, 2023

                                                  DENISE COTE
                                  United States District Judge